UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

CASE NO.: 21-cr-286-JSM-SPF

UNITED STATES OF AMERICA,

*Plaintiff,*

**v.**

JUAN GABRIEL RIOS-SILVA,

*Defendant.*
_____/

**SPECIFIC DEMAND FOR BRADY EVIDENCE AND INFORMATION AND DEMAND FOR RESPONSE TO THE DEFENDANT'S NOTICE OF INTENT TO RELY ON PUBLIC-AUTHORITY DEFENSE**

The government alleges that at an unknown date and continuing until August 2021, that Mr. Rios-Silva did knowingly and intentionally conspire with other persons to possess with the intent to distribute a controlled substance while on the high seas on board a vessel subject to the jurisdiction of the United States. Specifically, the government charges that the Defendant sold boat engines to persons involved in the transportation of cocaine from Colombia. During Mr. Rios-Silva's interrogation, it came to light that an agent of the government ("Sharkey") had contacted Mr. Rios-Silva previously.

This individual purchased boat engines and boats from Mr. Rios-Silva through a third party in Colombia (Oscar Valencia) prior to setting up an in-person meeting with Mr. Rios-Silva during the first two weeks of February 2014. Sharkey met with Mr. Rios-Silva

at his hotel in Miami-Beach. At this meeting, Sharkey held himself out to be an agent of the Drug Enforcement Administration. Sharkey showed Mr. Rios-Silva a business card with a badge emblem embossed on it. During this meeting, Sharkey attempted to recruit Mr. Rios-Silva to install GPS units on motors that were being sold at Mr. Rios-Silva's business, Argonautica. During this meeting, Mr. Rios-Silva inquired if he was doing anything illegal by selling boat engines to persons that perhaps were involved in the drug trade. Sharkey responded, in no uncertain terms, that Mr. Rios-Silva was not violating any laws. At the conclusion of this meeting in the hotel lobby, Sharkey invited Mr. Rios-Silva and his wife (Lina Becerra) to the Sawgrass Mills shopping mall for some shopping and to enjoy a nice meal[1]. The government has acknowledged that Sharkey is an individual who was/is a confidential source for the government, and not an agent. Regardless, Mr. Rios-Silva held a reasonably honest belief that Sharkey was an agent of the United States government. All documentation regarding this confidential source/undercover operative and his recruitment activities is in the custody of those agencies for which he worked and unavailable to private citizens.

During an in-person meeting with the government on or about November 5, 2021, undersigned counsel requested that the government identify this individual. The government indicated that they had not yet positively identified Sharkey despite having known of his existence since Mr. Rios-Silva's interrogation on August 1, 2021. At a

---

[1] During this second meeting at the restaurant (Villagio), Sharkey continued his attempts to recruit Mr. Rios-Silva to work for the government.

December 9, 2021 meeting, Sharkey was positively identified via photograph[2]. On February 16, 2022 (via e-mail correspondence) undersigned counsel requested Brady material related to Sharkey (in general) and specifically, documents related to the meetings, chats, calls, messaging, and all reports or other items that memorialized the contact between Sharkey and Mr. Rios-Silva. Further, counsel requested the government provide "the names and locations of all individuals who have been arrested, convicted and incarcerated as a result of Sharkey's work with law enforcement agencies of the United States along with other information and corroborating documents relating to his efforts as an authorized confidential source/informant and/or undercover operative for agencies of the United States Government in the recruitment of Mr. Rios-Silva and other defendants and/or targets." Counsel did so with the intent of reviewing the materials in order to determine the viability of his public-authority defense. If Sharkey was a confidential source/covert government operative and approached Mr. Rios-Silva to recruit him to become a source of information/confidential source, or unwitting source, the information is Brady material and should be provided in light of the representations that Sharkey made to Mr. Riois-Silva. However, counsel has yet to receive any documents or information relating to Sharkey and his work with law enforcement. In an abundance of caution, counsel had previously filed his Notice of Public-Authority Defense pursuant to Fed.R.Crim.Pro 12.3 on November 3, 2021. [D.E. 33]. Since the last email request on February 16, 2022, no documentation has been received.

---

[2] Undersigned has yet to be informed as to the true identity of "Sharkey."

## A. DEMAND FOR BRADY

Pursuant to Brady and Giglio, the court should order the government to turn over all the following information and documentation as it relates to the defendant's Public-Authority Defense and because it is in the sole custody of United States authorities.

1. The names and locations of all individuals who have been arrested, convicted and incarcerated as a result of Sharkey's work with law enforcement agencies of the United States along with other information and corroborating documents relating to his efforts as an authorized confidential source/informant and/or undercover operative for agencies of the United States Government in the recruitment of Mr. Rios-Silva and other defendants and/or targets.

2. Any and all documents reflecting agreements and/or understandings, formal or informal, between Sharkey (or any alias used by law enforcement offices to refer to Sharkey) and any law enforcement agencies including but not limited to DEA, FBI and Department of Homeland Security (or its predecessors) for the time period that Sharkey has operated as a confidential source/source of information/covert operative. Additionally, any such documents maintained by Colombian, Honduran, Guatemalan, or Panamanian authorities at the direction of or in addition to U.S. law enforcement.

3. Any and all logs or records reflecting money, funds or monetary benefits to Sharkey (or any alias used by law enforcement offices to refer to Sharkey) by any law enforcement agencies including but not limited to DEA, FBI and Department of Homeland Security (or its predecessors) for the time period that Sharkey has operated as a confidential

source/source of information/covert operative. Additionally, any such documents maintained by Colombian, Honduran, Guatemalan, or Panamanian authorities at the direction of or in addition to U.S. law enforcement.

4. Records for any and all expenses incurred by Sharkey (or any alias used by law enforcement offices to refer to Sharkey) which were paid by agencies of the government including but not limited to DEA, FBI and Department of Homeland Security (or its predecessors) for the time period that Sharkey has operated as a confidential source/source of information/covert operative. Additionally, any such documents maintained by Colombian, Honduran, Guatemalan, or Panamanian authorities at the direction of or in addition to U.S. law enforcement.

5. Records for any and all expenses regarding credit cards (including corresponding billing statements) which were given to Sharkey (or any alias used by law enforcement offices to refer to Sharkey) by any law enforcement agency including but not limited to DEA, FBI and Department of Homeland Security (or its predecessors) for the time period that Sharkey has operated as a confidential source/source of information/covert operative. Additionally, any such documents maintained by Colombian, Honduran, Guatemalan or Panamanian authorities at the direction of or in addition to U.S. law enforcement.

6. All phone numbers relating to phones either provided by, monitored by, or paid by law enforcement to Sharkey (or any alias used by law enforcement offices to refer to Sharkey) including but not limited to DEA, FBI and Department of Homeland Security

(or its predecessors) for the time period that Sharkey has operated as a confidential source/source of information/covert operative. Additionally, any such documents maintained by Colombian, Honduran, Guatemalan, or Panamanian authorities at the direction of or in addition to U.S. law enforcement.

7. Unredacted copies of any and all e-mails, correspondence, or other form of communications to and from Sharkey and United States law enforcement officers including <u>but not limited to</u>:

-AUSA Joseph Ruddy;

-AUSA James Zoll;

-AUSA Daniel Baeza;

-AUSA Kathy Peluso;

-Agent Miosotis Ortiz-Rodriguez, FBI;

-Agent Coleman Duncan, FBI;

-Agent Carlos Galloza, DEA;

-Agent Luis Aquino, HSI;

-Agent Dana Hatton, HSI;

-Agent Dan Kane, HSI;

-Agent Aneddail Torres-Ayala, FBI

-Agent Jessica Sandoval, FBI

-Agent Edison Sorrentin, HSI

-Agent Keely Hite, HSI

-Agent Dan King, FBI/DEA

-Any and all "handlers" of Sharkey's

-All other agents or U.S. Attorneys from Operation Panama Express that have had contact with, supervised, monitored, or otherwise communicated with Sharkey

-All other agents or U.S. Attorneys that have had contact with, supervised, monitored, or otherwise communicated with Sharkey.

8. Unredacted copies of any and all e-mails regarding Sharkey (or any alias used by law enforcement offices to refer to Sharkey) by United States law enforcement officers. Additionally, any such documents maintained by Colombian, Honduran, Guatemalan or Panamanian authorities at the direction of or in addition to U.S. law enforcement.

9. Any and all reports, documents or communications which memorialize when Sharkey (or any alias used by law enforcement offices to refer to Sharkey) was activated by law enforcement officers, including but not limited to DEA, FBI, Department of Homeland Security (or its predecessors). Additionally, any such documents maintained by Colombian, Honduran or Panamanian authorities at the direction of or in addition to U.S. law enforcement.

10. Any and all reports, documents, communications, recordings, reports, or reports of communication between Sharkey and Juan Rios-Silva. Additionally, any such documents or communications maintained by Colombian, Honduran, Guatemalan or Panamanian authorities at the direction of or in addition to U.S. law enforcement.

11. Any and all reports, documents, communications, recordings, reports, or reports of communication between Sharkey and Gerson Rios-Silva. Additionally, any such documents or communications maintained by Colombian, Honduran, Guatemalan or Panamanian authorities at the direction of or in addition to U.S. law enforcement.

12. Any and all reports, documents, communications, reports, recordings, or reports of communication between Sharkey and Oscar Rios-Silva. Additionally, any such documents or communications maintained by Colombian, Honduran, Guatemalan or Panamanian authorities at the direction of or in addition to U.S. law enforcement.

13. Any and all documents, communications, recordings, reports, or reports of communication between United States law enforcement officers and Sharkey that memorialize directing Sharkey to reach out to Gerson Rios-Silva on 8/9/21. Additionally, any such documents or communications maintained by Colombian, Honduran, Guatemalan or Panamanian authorities at the direction of or in addition to U.S. law enforcement.

14. Any and all documents, communications, recordings, reports, reports of communication between United States law enforcement officers related to any debriefing with Sharkey related to Juan Rios-Silva, Oscar Rios-Silva and/or Gerson Rios-Silva. Additionally, any such documents or communications maintained by Colombian,

Honduran, Guatemalan or Panamanian authorities at the direction of or in addition to U.S. law enforcement.

15. Photographs of any boats, vessels, boat engines or vessel engines, boat motors, or vessel motors that Sharkey sent to Gerson Rios-Silva on 8/27/21.

16. Any and all documents, communications, reports, recordings, or reports of communication between United States law enforcement officers between Sharkey and the agents coordinating a meeting in Cartagena, Colombia with Gerson Rios-Silva and Sharkey to cooperate for, or on behalf of, Juan Rios-Silva. Additionally, any such documents or communications maintained by Colombian, Honduran, Guatemalan or Panamanian authorities at the direction of or in addition to U.S. law enforcement.

17. Any and all documents, logs, ledgers, lists, communications, recordings, reports, or reports of communication between United States law enforcement officers related to and reflecting payments made to Sharkey for his cooperation with any governmental agencies or agencies of foreign governments. Additionally, any such documents or communications maintained by Colombian, Honduran, Guatemalan or Panamanian authorities at the direction of or in addition to U.S. law enforcement.

18. Any and all documents, communications, recordings, reports, or reports of communication between United States law enforcement officers reflecting prosecutions, indictments, charges, potential charges or other collateral criminal prosecutions that involved Sharkey prior to becoming a confidential source, human source, unwitting cooperator, or covert operative: Including but not limited to, any and all sentencing

documents, non-prosecution agreements, non-prosecution memorandums, plea agreement communications, Rule 35, or 5K1 agreements. Additionally, any such documents or communications maintained by Colombian, Honduran, Guatemalan or Panamanian authorities at the direction of or in addition to U.S. law enforcement.

19.     Any and all documents, communications, recordings, reports, or reports of communication between United States law enforcement officers regarding payments to be made to Gerson Rios-Silva to attend a meeting with Sharkey in Cartagena, Colombia: To include any travel costs and/or costs associated with travel to said meeting. Additionally, any such documents or communications maintained by Colombian, Honduran, Guatemalan or Panamanian authorities at the direction of or in addition to U.S. law enforcement.

20.     Any and all documents, communications, recordings, reports, or reports of communication between United States law enforcement officers and Sharkey that directed Sharkey to inform Gerson Rios-Silva not to bring attorneys to the planned/potential meeting in Cartagena, Colombia. Additionally, any such documents or communications maintained by Colombian, Honduran, Guatemalan or Panamanian authorities at the direction of or in addition to U.S. law enforcement.

21.     Any and all documents, communications, recordings, reports, or reports of communication between United States law enforcement officers including the United States Attorney's Office, or communications between law enforcement officers/agents and Sharkey between August, September, October, and November 2021 (including November 18, 2021 and November 26, 2021) related to Sharkey representing himself or holding

himself out to be an agent of the United States government to Juan Rios-Silva. Additionally, any such documents or communications maintained by Colombian, Honduran, Guatemalan or Panamanian authorities at the direction of or in addition to U.S. law enforcement.

22. Any and all documents, communications, recordings, reports, or reports of communication between United States law enforcement officers and Sharkey regarding the meeting in Miami in February of 2014 or any other meeting(s) between Sharkey and Juan Rios-Silva. Additionally, any such documents or communications maintained by Colombian, Honduran, Guatemalan or Panamanian authorities at the direction of or in addition to U.S. law enforcement.

23. Any and all documents, communications, recordings, reports, or reports of communication regarding the meeting(s) between Juan Rios-Silva and Sharkey. Additionally, any such documents or communications maintained by Colombian, Honduran, Guatemalan or Panamanian authorities at the direction of or in addition to U.S. law enforcement.

24. Any and all documents, communications, recordings, reports, or reports of communication, indictments, informations, criminal complaints, reports of investigation, or other documents that reflect all cases and investigations in which Sharkey was involved as a source of information, cooperating source, covert operative or otherwise acted as an agent of the United States or other government agency in which he had any role. Additionally, any such documents or communications maintained by Colombian,

Honduran, Guatemalan or Panamanian authorities at the direction of or in addition to U.S. law enforcement.

### B. DEMAND FOR RESPONSE TO PUBLIC AUTHORITY NOTICE

Additionally, the Defendant requests the government respond in writing, pursuant to Fed.R.Crim.P. 12.3, whether it admits or denies that Sharkey exercised the public-authority identified in the Defendant's notice. The Defendant's notice was filed on November 3, 2021. Pursuant to Fed.R.Crim.P. 12.3(a)(3) requires the government to respond within 14 days after receiving the Defendant's notice, but no later than 21 days before trial.

As this matter is currently set for trial on this Court's November 2022 trial calendar, and that the nature of this defense requires the acquisition of documents potentially located in a foreign country, counsel submits the government should order the government to file a response sooner rather than wait until 21 days before the trial.

### Local Rule 3.01(g) Certification

Undersigned counsel has conferred with Assistant United States Attorney, Joseph Ruddy, to ascertain his position to this motion; AUSA Ruddy objects, in part, to the motion as he has deemed some of the requests as over broad.

**WHEREFORE,** the Defendant, JUAN GABRIEL RIOS-SILVA, respectfully requests that this Honorable Court enter an Order directing the United States to turn over the requested Brady and Giglio material and to respond to the Defendant's Notice of Public-Authority Defense.

### CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on **March 10, 2022,** I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record via transmission Notices of Electronic Filing generated by CM/ECF.

Respectfully submitted,

**PRIETO LAW FIRM**
55 Merrick Way, Suite 212
Coral Gables, FL 33134
Phone: (305) 577-3440
Fax:    (786) 971-5658
frank@frankprietolaw.com

By:   */s/Frank A. Prieto*
FRANK A. PRIETO, ESQ.
Florida Bar No.: 514071