UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**UNITED STATES OF AMERICA,**          CASE NO.: 21-cr-286-JSM-SPF

v.

**JUAN GABRIEL RIOS-SILVA,**
    *Defendant.*
_____/

<u>**DEFENDANT'S MOTION TO DISMISS DUE TO LACK OF JURISDICTION**</u>

    **COMES NOW** the Defendant, JUAN GABRIEL RIOS ("Mr. Rios"), by and through undersigned counsel, and hereby respectfully moves this Honorable Court to dismiss the Indictment for lack of jurisdiction. The United States lacks the necessary jurisdictional nexus to charge him under 46 U.S.C. §§ 70503(a), 70506(a), and 21 U.S.C. § 960(b)(1)(B)(ii), as Mr. Rios's alleged conduct occurred exclusively within Colombia, with no demonstrated connection to U.S. territory, waters, or citizens. In support of this motion, Defendant states as follows:

**I. Introduction**

    Mr. Rios contends that the United States does not possess jurisdiction to prosecute him under MDLEA because there is no factual basis or legal foundation connecting his actions in Colombia to U.S. interests. The Indictment's allegations fail to meet the standards for jurisdiction under U.S. law, as they do not demonstrate any substantial or specific nexus between Mr. Rios's conduct and the United States.

MDLEA, 46 U.S.C. §§ 70503(a) and 70506(a), establishes that jurisdiction over foreign individuals engaged in drug trafficking on the high seas is contingent upon a connection to U.S. interests, typically evidenced by conduct occurring on a U.S.-registered vessel or within U.S. territorial jurisdiction. In this case, however, Mr. Rios's activities were confined to Colombia, involving the sale of boat engines to independent contractors without any intent or knowledge that these goods would be misused. Absent evidence that Mr. Rios's transactions involved U.S.-flagged vessels, U.S. entities, or any intent to affect the United States, the Indictment does not meet MDLEA's jurisdictional standards.

The Court should further consider the international principles of due process, comity, and sovereignty, which restrict extraterritorial application of U.S. laws to cases posing a direct threat to U.S. security or substantial U.S. interests. In United States v. Perlaza, 439 F.3d 1149, 1167 (9th Cir. 2006), the Ninth Circuit held that MDLEA jurisdiction requires a specific and substantial nexus to U.S. interests, cautioning against speculative or indirect links. Given that Mr. Rios's alleged conduct lacked any U.S.-directed intent, the government's attempt to assert jurisdiction over his lawful Colombian business activities is an overreach of MDLEA's statutory framework and violates established legal principles of sovereignty and due process. Without such a tangible link to U.S. interests, the government's assertion of jurisdiction is unwarranted and constitutionally unsound.

**II. Procedural History**

On July 30, 2021, the Defendant was charged by way of a complaint with one count of conspiring to possess with intent to distribute five kilograms or more of cocaine, while on board a vessel subject to the jurisdiction of the United States, in violation of 46 U.S.C. §§ 70503(a) and 70606(a) [ECF No. 100] He was arrested on August 2, 2021. [ECF No. 2][1] He was detained and has been held in federal custody since. [ECF No. 10] On August 25, 2021, the Defendant was charged by way of indictment with one count of knowingly and intentionally conspiring with other persons with intent to distribute a controlled substance involving five kilograms or more of cocaine while upon the high seas on board a vessel subject to the jurisdiction of the United States, in violation of 46 U.S.C. §§ 70503(a) and 70506(a) and (b), and 21 U.S.C. § 960(b)(1)(B)(ii). [ECF No. 17]

On September 15, 2021, the Defendant was arraigned before Magistrate Judge Sean Flynn. [ECF No. 24] Trial was set for November 1, 2021. [ECF No. 25] On October 8, 2021, the court granted Defendant's Motion to Extend Pretrial Motions and Notices, extending the deadline to October 20, 2021. [ECF No. 31] On October 21, 2021, Defendant filed an unopposed motion to continue trial, which this Honorable Court granted; this case was placed on the January 22 trial docket. [ECF No. 32] On December 22, 2021, trial was set for January 10, 2022. [ECF No. 36] On this same day, the Defendant filed a request to continue trial, which this Honorable Court granted; trial was set to commence on March 22, 2022. [ECF No. 38] On

---

[1] The Defendant asserts that he was actually arrested on August 1, 2021, in Miami, Florida, at the Miami International Airport.

February 14, 2022, trial was set for a date certain of February 28, 2022. [ECF No. 42]

Also, on February 14, 2022, the Defendant filed a request to continue trial; this Court granted a hearing on the motion. [ECF No. 44, 45] On February 18, 2022, the Defendant appeared in person before Judge Moody, [ECF Nos. 46,47], and the court granted the Defendant's Unopposed Motion to Continue Trial Date (60 Days) [ECF No. 44], with trial set to commence on November 30, 2022. On March 4, 2022, Defendant requested an extension of time in order to file a waiver of speedy trial. [ECF No. 48] On March 7, 2022, the court granted the Defendant's Motion to Extend Time to File Waiver of Speedy Trial. [ECF 49] On March 10, 2022, the Defendant filed a motion for Brady materials. [ECF No. 50]

Thereafter, this Honorable Court held a status conference on March 16, 2022, and directed the United States to respond to the Brady motion. [ECF No. 56] The United States responded on March 5, 2022, and this Court held a hearing on April 26, 2024. [ECF No. 60] This Honorable Court tentatively set trial for November 2022 And excluded the time in between in the interest of justice. [ECF No. 63] The time from April 26, 2022, to November 30, 2022, was excluded under 18 U.S.C. § 3161(h). Id. On July 7, 2022, in response to the parties' filings regarding Defendant's defense of public authority (ECF Nos. 33, 64, 66), this Court ordered the defense to be heard at the beginning of trial. [ECF No. 66] On November 4, 2022, the court granted Defendant's Unopposed Motion for Extension of Time as to the Defendant's filing of Waiver of Speedy Trial extended to November 8, 2022. (ECF 83)

On November 8, 2022, the Defendant filed a waiver of speedy trial from October 31, 2022, through January 31, 2023. [ECF No. 84] On December 21, 2022, the court granted a joint Motion to Continue Trial and set trial to commence on April 3, 2023. [ECF Nos. 92, 93]

On January 5, 2023, Defendant filed Unopposed Motion to Take Deposition and the court set hearing on the motion to January 17, 2023. [ECF Nos. 94, 95] On January 25, 2023 the court granted the Defendant's Unopposed Motion to Take Foreign Depositions. [ECF No 100) There were originally five witnesses. Three were deposed. One was indicted. For obvious reasons, no further depositions were conducted.

On January 25, 2023 the Defendant filed Waiver of Speedy trial through April 28, 2023 (ECF 101) On March 9, 2023 the government took Rule 15 Deposition of essential witness Milton Rios. Thereafter, on March 15, 2023 the government filed a superseding indictment charging the Defendant and his brother with violation of 46 U.S.C. §§ 70503(a), 70506(a) and (b), and 21 U.S.C. § 960(b)(1)(B)(ii) conspiracy to possess with intent to distribute a controlled substance, which violation involved five (5) kilograms or more of a mixture and substance containing a detectable amount of cocaine, a Schedule II controlled substance while upon the high seas on board a vessel subject to the jurisdiction of the United States (Count I) and Conspiracy to conduct and attempt to conduct financial transactions affecting interstate and foreign commerce, which transactions involved the proceeds of a specified unlawful activity, that is, possession with intent to distribute five kilograms or more of a mixture and

substance containing a detectable amount of cocaine a Schedule II controlled substance while upon the high seas on board a vessel subject to the jurisdiction of the United States in violation of 18 U.S.C. § 1956(a)(1)(B)(i). (Count II)

On May 5, 2023, the Defendant filed a waiver of speedy trial from April 3, 2023 through November 30, 2023. [ECF No. 117] On December 20, 2023, this Honorable Court held a Status conference where the government requested the trial to be continued pending co-defendant Milton Orlando Rios-Silva's extradition from Colombia to the United States. The government argued that the Defendant's trial should be continued to conserve judicial resources and conduct trial for both defendants at the same time. [ECF No. 150] On December 29, 2023, over the Defendant's objection, this Honorable Court issued an Order to continue the trial to the January 2025 docket. [ECF No. 152] Since December 20, 2023, there have been no continuances. Mr. Rios-Silva has neither requested nor filed a waiver for a speedy trial. Mr. Rios-Silva's trial should have commenced on Monday, March 18, 2024, or no later than 70 days from January 8, 2024, trial date. The 70-day period allowed for trial under the Speedy Trial Act ran on Monday, March 18, 2024.

On September 5, 2024 the court entered an Order Denying Mr. Rios' Motion to Dismiss for Speedy Trial [ECF No. 169] concluding, "that the period awaiting codefendant Milton Rios-Silva's extradition fell within "reasonable period of delay" described in § 3161(h)(6)." [ECF No. 169] citing to the government's argument and case law from the Eleventh Circuit that allegedly supports the Court's continuance of the trial under the circumstances of this case. *See, e.g. United States v. Tobin*, 840 F.2d

867, 869 (11th Cir. 1988), *United States v. Murray*, 154 F. App'x 740, 746 n. 8 (11th Cir. 2005). Id. The court further stated Mr. Rios' needed to establish actual prejudice associated with the delay to prevail on his motion and that the only prejudice Defendant points to relates to the death of "Sharkey," whom the Defendant claims was an agent of the United States government which was not material to any prejudice analysis because Sharkey's death occurred before the Court continued the trial to January 2025.

Mr. Rios filed a Notice of Appeal [ECF No. 171] of the interlocutory order to deny his motion to dismiss on September 11, 2024, which was dismissed, sua sponte, promptly on October 15, 2024 by the Eleventh Circuit for lack of jurisdiction because Mr. Rios' speedy trial claim is not final.

### III. Points of Authority

MDLEA and related statutes require the government to establish a substantial connection between the defendant's conduct and U.S. interests. Generally, MDLEA jurisdiction applies only to drug trafficking on vessels under U.S. jurisdiction or when there exists a clear nexus to U.S. interests. Courts maintain a strong presumption against extraterritoriality unless Congress explicitly indicates otherwise, and speculative or tenuous connections to the United States are deemed insufficient. See *Morrison v. National Australia Bank Ltd.*, 561 U.S. 247, 255 (2010) (emphasizing the presumption against extraterritorial application of U.S. law); *United States v. Lopez-Vanegas*, 493 F.3d 1305, 1312 (11th Cir. 2007) (finding that jurisdiction requires

a "concrete connection" to U.S. interests, which was unmet in cases relying on speculative ties).

Under international law principles, such as the protective principle, extraterritorial jurisdiction is further limited to instances where foreign actions pose a direct and substantial threat to U.S. interests. Courts have underscored that due process mandates jurisdiction to involve "meaningful contacts" with the United States. See *United States v. Yousef*, 327 F.3d 56, 112 (2d Cir. 2003) (explaining that foreign conduct must have a significant impact on U.S. interests to justify jurisdiction); *United States v. Davis*, 905 F.2d 245, 249 (9th Cir. 1990) (holding that meaningful contacts are required for extraterritorial jurisdiction to satisfy due process).

Furthermore, principles of sovereignty and comity restrict U.S. jurisdiction over foreign nationals whose actions occur within their own countries. As the court articulated in *United States v. Felix-Gutierrez*, 940 F.2d 1200, 1204 (9th Cir. 1991), exercising jurisdiction over foreign nationals for conduct within their home countries contravenes international norms and principles of comity unless a clear U.S. connection is demonstrated. In cases lacking such a nexus, courts generally defer to the sovereignty of the foreign nation, ensuring respect for its jurisdiction over internal matters.

**IV. Argument**

    **A.  Lack of Nexus Between Defendant's Conduct and the United States**

To satisfy MDLEA's jurisdictional requirements, the government must demonstrate a substantial and direct link between Mr. Rios's alleged conduct in Colombia and U.S. interests. Mr. Rios's alleged and grossly misrepresented role, as outlined in the Indictment, was limited to the lawful sale of boat engines within Colombia. Such business activities, absent any intent to target or impact the United States, do not meet MDLEA's nexus requirement, which courts have interpreted to mandate a concrete connection to U.S. interests *see United States v. Lopez-Vanegas*, 493 F.3d 1305, 1311 (11th Cir. 2007) (holding that speculative or indirect connections to the U.S. are insufficient to establish jurisdiction)).

The government's Indictment broadly asserts that Mr. Rios "conspired to distribute cocaine while on a vessel subject to U.S. jurisdiction" but fails to substantiate any specific factual link between Mr. Rios's actions and U.S. interests. In *United States v. Perlaza*, 439 F.3d 1149, 1165 (9th Cir. 2006), the court emphasized that MDLEA jurisdiction must be based on a "*concrete connection*" to U.S. interests and that "*speculative or hypothetical connections*" do not meet this standard. Like in *Perlaza*, the government here provides only general allegations of conspiracy without tying Mr. Rios's conduct to any U.S.-registered vessel, U.S. citizens, or intent to impact the United States directly. This lack of specific allegations undermines the jurisdictional basis under MDLEA and fails to meet established due process requirements.

Moreover, the protective principle of international law restricts extraterritorial jurisdiction to cases where foreign conduct poses a significant and immediate threat

to the prosecuting state. In *United States v. Yousef*, 327 F.3d 56, 112 (2d Cir. 2003), the court clarified that foreign actions must have a "direct and substantial impact" on U.S. security to justify extraterritorial jurisdiction. Here, Mr. Rios's lawful business in Colombia does not satisfy this threshold. Even if third parties later misused these engines for criminal activities, Mr. Rios had neither knowledge of nor intent for his products to be involved in any U.S.-targeted criminal activity, thus failing to pose any substantial threat to U.S. security.

Due process principles also limit the government's ability to assert jurisdiction over foreign conduct. In *United States v. Davis*, 905 F.2d 245, 249 (9th Cir. 1990), the court held that due process requires "meaningful contacts" with the United States to justify extraterritorial jurisdiction. Mr. Rios's transactions, which were conducted entirely within Colombia without any U.S.-based involvement, lack the requisite "meaningful contacts" necessary to establish U.S. jurisdiction. Applying U.S. law to Mr. Rios's conduct, absent any substantial and intentional connection, would exceed MDLEA's intended scope and violate due process standards.

Furthermore, Florida's state statute on special maritime criminal jurisdiction, § 910.006, underscores the state's interest in cooperating with federal and international authorities while avoiding jurisdictional overreach that conflicts with other nations' sovereignty. As Mr. Rios's actions were confined to Colombia and compliant with Colombian law, it is appropriate to defer jurisdiction to Colombia, respecting international principles of sovereignty and comity. This approach aligns with the reasoning in *United States v. Felix-Gutierrez*, 940 F.2d 1200, 1204 (9th Cir. 1991),

where the court emphasized that applying U.S. jurisdiction to foreign nationals acting within their own countries, absent substantial U.S. involvement, contravenes principles of comity. The government cannot attempt to play the role of the world's police force and bring forth cases that do not belong to the U.S. judiciary.

MDLEA's jurisdictional prerequisites are not met in this case due to the absence of any substantial nexus to U.S. interests. Mr. Rios's conduct within Colombia fails to meet the concrete connection required under MDLEA, rendering the government's assertion of jurisdiction both unsupported and legally unsound. Accordingly, the Indictment should be dismissed for lack of jurisdiction.

**B.   Insufficiency of the Indictment to Establish Jurisdiction**

This Indictment against Mr. Rios fails to establish jurisdiction because it lacks the necessary factual specificity demonstrating how his alleged conduct impacted U.S. interests. Courts consistently uphold that for MDLEA to apply, an indictment must contain specific, concrete allegations that provide a clear basis for jurisdiction, particularly when addressing extraterritorial conduct. Without this level of factual detail, jurisdictional claims are speculative and legally insufficient *see Flatirons Bank v. Alan W. Steinberg L.P.,* 233 So. 3d 1207, 1214 (Fla. Dist. Ct. App. 2018); *United States v. Lopez-Vanegas*, 493 F.3d 1305, 1311 (11th Cir. 2007)).

MDLEA's jurisdictional provisions apply primarily to drug trafficking offenses on vessels subject to U.S. jurisdiction or conspiracies with an overt nexus to the United States. The Indictment, however, does not include factual allegations showing Mr. Rios knowingly engaged in conduct that would target U.S. interests or

citizens. Mr. Rios was never on any vessels, did not install any engines, and has no connections to any criminal organization. Instead, the government relies on generalized assertions that fail to link his lawful sales of boat engines in Colombia to any U.S.-targeted activity. Aforementioned in *United States v. Perlaza*, 439 F.3d 1149, 1161 (9th Cir. 2006), where the court dismissed claims lacking a "concrete connection" to U.S. interests, Mr. Rios's conduct as alleged does not fulfill MDLEA's jurisdictional requirements. The absence of allegations tying Mr. Rios's actions to U.S.-flagged vessels or U.S.-related operations renders the government's claims utterly inadequate.

*United States v. Davis*, 905 F.2d 245, 249 (9th Cir. 1990) was clear; the court emphasized that extraterritorial jurisdiction must be premised on substantial, intentional connections to the United States. In reiteration, Mr. Rios's activities in Colombia, including sales to independent contractors without any U.S. affiliation, lack the necessary "meaningful contacts" for MDLEA jurisdiction. Applying U.S. jurisdiction without these contacts overreaches MDLEA's statutory bounds and infringes upon due process rights. This deficiency is further underscored by *Underwood v. Univ. of Ky.*, 390 So. 2d 433, 436 (Fla. Dist. Ct. App. 1980), where the court dismissed claims for lack of a "rational nexus" to the forum jurisdiction, illustrating that courts require a real connection to justify extraterritorial assertions.

The Eleventh Circuit's decision in *Lopez-Vanegas*, 493 F.3d at 1311, directly supports this position, as the court held that speculative or indirect connections to the United States are insufficient to establish MDLEA jurisdiction. In *Lopez-Vanegas*,

jurisdiction was denied where the government failed to show that alleged actions bore a tangible impact on the United States. Here, too, the Indictment lacks specific allegations of U.S.-targeted activities, relying instead on generalized conspiracy claims that fall short of the jurisdictional threshold required under MDLEA. At the same time, Mr. Rios has been unjustly incarcerated for years for allegedly having knowledge of a conspiracy that utilized engines he sold to someone fraudulently holding himself out as a government agent in order to conduct the sale.

The government's delayed disclosure of critical *Brady* evidence further undermines its jurisdictional claims and Mr. Rios's ability to mount a full defense. *Brady* obligations require the government to disclose exculpatory evidence promptly, especially when such evidence is relevant to jurisdictional challenges or could significantly impact a defendant's strategy. Mr. Rios did not receive essential *Brady* materials and it has been nearly four years post-indictment, and repeated court petitions and orders have been brought fourth [ECF Nos. 50, 72] yet the government has still not complied. Courts have ruled that delayed Brady disclosures violate due process when they prevent defendants from preparing a complete defense, particularly when the evidence pertains to jurisdictional element*s see United States v. Birk*, 437 F.3d 678, 679 (7th Cir. 2006).

Delayed disclosures in this case relate specifically to potential government misconduct and entrapment involving government agent "Sharkey," a witness whose evidence was only disclosed after his death in August 2022. This delay deprived Mr. Rios of crucial information needed to address jurisdictional issues and entrapment

defenses. Under *Brady v. Maryland*, 373 U.S. 83, 87 (1963), and the *Due Process Protections Act*, courts have consistently underscored the government's duty to provide timely access to exculpatory evidence. The Eleventh Circuit has similarly ruled that withholding such evidence obstructs defendants' due process rights by preventing full and fair defense preparation *see Jones v. State*, 998 So. 2d 573, 580 (Fla. 2008); *Asay v. State*, 210 So. 3d 1, 30 (Fla. 2016). Here, the government's *Brady* violations directly impact the sufficiency of the Indictment to establish jurisdiction, as timely access to this evidence would have enabled Mr. Rios to challenge the constructive nexus claims more effectively.

*Brady* violations continue to obstruct Mr. Rios's opportunity to challenge not only the speculative assertions of U.S. interest but also potential government overreach. Courts have held that suppressed evidence may materially affect the outcome when it pertains to the jurisdictional nexus, especially when timely disclosures could reveal flaws in the government's jurisdictional *assertions see Mungin v. State,* 141 So. 3d 138, 147 (Fla. Dist. Ct. App. 2014). As a result, this due process violation necessitates dismissing the Indictment to uphold Mr. Rios's rights.

### C. Rejection of Constructive Nexus Theory Due to Lack of Specificity

The government's attempt to assert jurisdiction over Mr. Rios based on a "constructive nexus" theory is unsupported due to the Indictment's lack of specific allegations that demonstrate Mr. Rios knowingly acted with willful blindness or recklessness toward U.S. interests. For a constructive nexus theory to apply, there must be concrete evidence showing the defendant's intent or awareness that their

conduct would impact the United States. As established in *United States v. Lopez-Vanegas*, 493 F.3d 1305, 1312 (11th Cir. 2007), mere speculative or hypothetical connections are inadequate to fulfill MDLEA's jurisdictional requirements.

In *Lopez-Vanegas*, the court rejected jurisdiction where the allegations lacked substantive detail tying the defendants' actions to U.S. interests, underscoring that speculative or indirect connections are insufficient for MDLEA jurisdiction.

Similarly, here, the Indictment relies on general assertions without detailing specific facts linking Mr. Rios's engine sales in Colombia to U.S.-targeted drug trafficking activities. This lack of specificity is inconsistent with precedent, which mandates a tangible nexus, not mere assumptions or indirect associations, to establish jurisdiction over foreign conduct *see Foster v. State*, 132 So. 3d 40, 50 (Fla. Dist. Ct. App. 2013) (holding that speculative inferences unsupported by concrete evidence are inadequate to establish criminal intent).

Moreover, courts have held that jurisdictional claims based on constructive theories must include clear evidence of the defendant's intent to target U.S. interests. In *Parker v. State*, 89 So. 3d 844, 850 (Fla. Dist. Ct. App. 2012), the court ruled that jurisdiction requires substantive evidence, not assumptions or speculative connections. Here, the government's approach falls short by failing to provide evidence that Mr. Rios intended or should have foreseen his actions as impacting the United States. Instead, the government interprets lawful business communications as conspiratorial, relying on conjecture rather than direct evidence of criminal intent. The court in *Preston v. State*, 528 So. 2d 896, 898 (Fla. Dist. Ct. App. 1988),

reinforced that non-speculative, concrete evidence is required for claims of criminal behavior, and the absence of this level of proof in Mr. Rios's case supports dismissal.

Recharacterization of routine business as evidence of conspiracy compounds its failure to substantiate the Indictment with the necessary specificity. Mr. Rios's communications regarding parts quotes and engine sales, conducted under full compliance with Colombian law, are legitimate business practices, and misinterpreting these communications as criminal without concrete proof of intent violates due process principles. In *Medina v. State*, 573 So. 2d 293, 295 (Fla. Dist. Ct. App. 1991), the court emphasized that speculative reinterpretations of lawful interactions cannot serve as a basis for criminal allegations without objective evidence of illegal intent. The government's reliance on conjecture to portray Mr. Rios's business practices as conspiratorial parallels the reasoning in *Rivera v. State*, 187 So. 3d 822, 826 (Fla. Dist. Ct. App. 2015), where cumulative inferences without solid proof were deemed insufficient for criminal prosecution.

This approach also mirrors *Foster v. State*, 132 So. 3d 40, 47 (Fla. 2013), in which the court dismissed speculative associations as a basis for jurisdiction. In Mr. Rios's case, the government lacks the necessary factual foundation to substantiate its claims and instead presents a narrative unsupported by evidence. Without clear, objective proof tying Mr. Rios's business communications to U.S.-targeted activities, the government's speculative assertions fail to meet MDLEA jurisdictional standards. The government has had nearly four years to build its case, provide *Brady* materials, and extradition of co-defendant Milton Orlando Rios-Silva, yet there is

nothing to show the fruits of its labor in this case other than unreasonable delay depriving Mr. Rios of his freedom. If the government's allegations are founded on facts, then why has co-defendant Milton Orlando Rios-Silva not been extradited from Columbia when this trial is mere months away?

## D. Violation of International Law and Principles of Comity

The assertion of U.S. jurisdiction over Mr. Rios's actions directly contravenes fundamental principles of international law and comity. Exercising jurisdiction in this case disregards Colombia's sovereignty over lawful business activities conducted within its borders, violating established norms of international respect. Under principles of comity, nations are expected to respect each other's judicial and legal authority, especially when the conduct lacks direct impact on the forum state. The U.S. Supreme Court underscored this expectation in *Hilton v. Guyot*, 159 U.S. 113, 164 (1895), which dictates that respect for other nations' jurisdiction is essential in cases where the alleged conduct has no direct bearing on the forum state.

International law principles, as articulated in the Restatement (Third) of Foreign Relations Law § 403, assert that extraterritorial jurisdiction should be exercised only when reasonable and when a substantial connection to the forum state exists. In the present case, Mr. Rios's business dealings involved the sale of engines for lawful purposes within Colombia, governed by Colombian law. No concrete U.S. connection exists, nor is there any indication that Mr. Rios intended to affect U.S. interests. This principle upheld in *United States v. Yousef*, 327 F.3d 56, 112 (2d Cir. 2003), where the court held that extraterritorial jurisdiction is justified only when

foreign conduct significantly impacts U.S. interests yet Mr. Rios still has no understanding how lawful business transactions have now tied him to criminal activity.

Moreover, Florida courts require "purposeful availment" to establish jurisdiction over foreign actors. In *Venetian Salami Co. v. Parthenais*, 554 So. 2d 499, 502 (Fla. 1989), the Florida Supreme Court underscored that the defendant's conduct must be directed at the state to justify jurisdiction. Similarly, the U.S. Supreme Court in *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980), clarified that incidental or unintended effects within the United States do not meet the jurisdictional threshold of purposeful availment. Mr. Rios's business operations, limited to Colombia, do not satisfy this requirement, underscoring the jurisdictional overreach of the government's case.

Additionally, as the U.S. Supreme Court emphasized in *F. Hoffmann-La Roche Ltd. v. Empagran S.A.,* 542 U.S. 155, 166 (2004), extraterritorial jurisdiction should be exercised with restraint, especially when it risks infringing on another country's sovereignty or legitimate interests. The government's prosecution of Mr. Rios over lawful activities in Colombia disregards Colombia's jurisdiction and runs counter to established international norms. This stance is consistent with *Morrison v. National Australia Bank Ltd.*, 561 U.S. 247, 255 (2010), where the Court held that U.S. laws are presumed to apply domestically unless Congress clearly intends extraterritorial application. The lack of explicit congressional intent here further supports the dismissal of the Indictment.

Exercising jurisdiction in this case without a substantial U.S. nexus disregards Colombia's sovereignty and raises potential diplomatic concerns. Respecting comity and international norms aligns with the principles established in *Felix-Gutierrez* and *Hilton v. Guyot*. The absence of any direct connection between Mr. Rios's actions and U.S. interests further strengthens the argument for dismissal on the grounds of international comity. Consequently, the Indictment should be dismissed to uphold these foundational principles so that the government cannot do this to another innocent human.

V. **Conclusion**

The government's failure to establish a specific, tangible connection between Mr. Rios's Colombian business activities and U.S. interests, compounded by delayed Brady disclosures, renders the Indictment jurisdictionally deficient and highlights clear due process violations. The speculative nature of the government's assertions and its reliance on generalized conspiracy allegations fail to meet MDLEA's jurisdictional requirements. In line with established U.S. and international legal principles, the government's claims overreach the MDLEA's scope and infringe upon Mr. Rios's due process rights.

**WHEREFORE**, Mr. Rios respectfully requests that this Court dismiss the charging documents and Indictment with prejudice.

Respectfully submitted,

*s/Rebecca L. Castaneda*
Rebecca L. Castaneda
Florida Bar No. 1007926

Rebecca@CastLF.com
The Castaneda Law Firm PLLC
506 N. Armenia Avenue
Tampa, Florida 33609-1703
(813) 694-7780

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on **November 18, 2024,** I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record via transmission Notices of Electronic Filing generated by CM/ECF.

*s/Rebecca L. Castaneda*
Rebecca L. Castaneda
Florida Bar No. 1007926
Rebecca@CastLF.com
The Castaneda Law Firm PLLC
506 N. Armenia Avenue
Tampa, Florida 33609-1703
(813) 694-7780