# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

**UNITED STATES OF AMERICA,**   CASE NO. 8:21-cr-286-JSM-SPF

   *Plaintiff,*

**v.**

**JUAN GABRIEL RIOS-SILVA,**

   *Defendant.*

_____/

## DECLARATION OF FRANK PRIETO IN SUPPORT OF DEFENDANTS OPPOSED MOTION TO SUPRESS STATEMENTS ALLEGEDLY MADE TO LAW ENFORCEMENT

I, FRANK PRIETO, an attorney duly admitted to practice before this Court, hereby declare under penalty of perjury that the following is true and correct:

1. I am the prior counsel of Juan Gabriel Rios Silva and a member of the Florida Bar.

2. I respectfully submit this declaration in support of Defendant's Opposed Motion to Suppress Statements Allegedly Made to Law Enforcement.

3. I was counsel for the defendant in this matter from August 18, 2021 until March 6, 2024.

4. During my representation of Mr. Rios Silva, we participated in two

proffers with law enforcement. These occurred on November 5, 2021, and December 9, 2021.

5. A review of my contemporaneous notes from the November 5, 2021, proffer session indicate that FBI Special Agent Miosotis Ortiz-Rodriguez was not present with AUSA Joseph Ruddy during this interview. Other agents were present and possibly an analyst.

6. The proffer session started with a review of the Kastigar letter at 10:30 a.m. at which time we signed the document. During this interview, Mr. Rios-Silva discussed a gentleman, "Sharkey," that held himself out to be an agent of the Drug Enforcement Administration. "Sharkey" attempted to recruit Mr. Rios Silva as an asset. Mr. Rios Silva described the physical appearance of this "agent," and his accent. He met with the gentlemen in 2016 in Miami, Florida where "Sharkey" showed him a business card that identified "Sharkey" as an agent. After discussions about Sharkey, AUSA Joseph Ruddy shifted to discussing the alleged statements made by Mr. Rios Silva to FBI agent Miosotis Ortiz-Rodriguez in his post-arrest interview.

7. When questioned by AUSA Joseph Ruddy about having access to semi-self-propelled semisubmersible ("SPSS") build sites, being paid bonuses for successful narcotics ventures, and knowledge that the engines he sold were to be used for narcotics ventures, Mr. Rios Silva denied he made those statements to

agent Ortiz-Rodriguez. AUSA Joseph Ruddy became visibly perturbed by this denial. AUSA Ruddy phoned Special Agent Ortiz-Rodriguez (who I believe reviewed her notes) and confirmed that Mr. Rios Silva did not have access to build sites contrary to her report and that he was not paid bonuses, also contrary to her report. She acknowledged that her report was not accurate; however, she insisted that Mr. Rios Silva stated he "knew" motors were used for narcotics ventures and that he sold diesel Cummings BT6 motor that he "knew" was used for a semi-submersible. Mr. Rios Silva denied he made those statements, and the proffer session was terminated.

8. The following portions of Mr. Rios Silva's post arrest interview were included in the law enforcement report but have been denied by Mr. Rios Silva since the inception of this case:

   a. He never said he "knew" the engines would be outfitted on vessels for the purpose of narcotics trafficking activities;
   b. He never said that he "knew" the Cummins BT6 diesel engines were for self-propelled semi-submersibles (SPSS);
   c. He never charged higher prices for engines to traffickers and never sold engines on consignment as one of the flips claimed;
   d. He never delivered anything to the build sites of go-fast vessel or self-propelled semi-submersibles;
   e. He did not sell 24 motors; he stated, "vendi cuatro," as opposed to, he sold him "veinticuatro."
   f. He did not make specialty "repair kits" for narco trafficking customers; he would sell a standard repair kit as any customer could buy that had extra hoses, gaskets, seals, etc.

9. I have received copies of the alleged statements made to law

enforcement. Mr. Silva has always denied that these "statements" are an accurate and correct reflection of his actual statements made to law enforcement. Furthermore, agent Miosotis Ortz-Rodriguez has admitted that her report contains "statements" attributed to Mr. Rios Silva that he did not make.

10. I have received a copy of Special Agent Miosotis Ortiz-Rodriguez's notes of her post-arrest interview. I do not know if those are her notes made in real time, but they do show an absence of the alleged statements made by my client during his interview as indicated in paragraph 7 above.

11. A second proffer was held on December 9, 2021. At this proffer session, agent Miosotis Ortiz-Perez was physically present with other agents and an analyst. AUSA Joseph Ruddy was not present. Based on the description provided at the November 9, 2021 proffer session, agents presented a photograph of an individual that Mr. Rios identified as the "agent" who tried to recruit him. The government later conceded "Sharkey" was a former paid informant that was blacklisted for some time because of misconduct and then recruited again by federal agencies despite this misconduct.

12. After identifying "Sharkey," agent Miosotis Ortiz-Perez went back to try and have Rios Silva affirm the statements attributed to him as contained in Paragraph 8 above. Mr. Rios Silva denied that he made those statements, and

the interview was terminated shortly thereafter because he would not adopt the statements contained in her report of the post-arrest interview.

13. New counsel was hired before I could contest the accuracy of the report or make a request that the reports be corrected.

DATED THIS 8th day of April 2025.

Respectfully submitted,

*s/Frank Prieto*
Frank Andrew Prieto
Prieto Law Firm
Florida Bar No. 514071
55 Merrick Way, Suite 212
Coral Gables, Florida 33134
Frank@FrankPrietoLaw.com
(305) 577-3440
