UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

v.                                       CASE NO. 8:21-cr-286-JSM-NHA

JUAN GABRIEL RIOS-SILVA

## GOVERNMENT'S MOTION FOR JUDICIAL DETERMINATION THAT THE VESSELS WERE SUBJECT TO THE JURISDICTION OF THE UNITED STATES

The United States of America requests this Court find that the vessels in this case were subject to the jurisdiction of the United States at the time they were interdicted by United States Coast Guard. The following four vessels were in international waters when the Coast Guard interdicted them: July 18, 2015; November 30, 2017; September 5, 2019; and December 17, 2019. The Coast Guard interdictions on July 18, 2015, and December 17, 2019, both have Department of State certifications establishing United States jurisdiction over those vessels (the certifications were filed at Dockets 74 and 217).

Under 46 U.S.C. § 70502(d)(1(B), the Coast Guard interdictions from November 30, 2017, and September 5, 2019, involved vessels without nationality in international waters because the masters made no claim of nationality, and the vessels were intercepted in international waters.

This motion summarizes the facts of each case, explains the applicable law, and establishes why the vessels were stateless and subject to the jurisdiction of the United States.

## SUMMARY OF FACTS

The defendant is charged in Count One of the Superseding Indictment with conspiracy to possess with intent to distribute five kilograms or more of a mixture or substance containing a detectable amount of cocaine, in violation of the Maritime Drug Law Enforcement Act ("MDLEA"), 46 U.S.C. § 70501, *et seq*. Over many years, the defendant agreed with numerous narcotraffickers to supply engines for drug smuggling vessels to include the interdictions from July 2015, November 2017, September 2019, and December 2019.

### July 18, 2015

The Coast Guard Cutter STRATTON interdicted a self-propelled semi-submersible (SPSS) in international waters over 150 nautical miles away from land. The Coast Guard contacted Colombia to confirm the nationality of the vessel, but Colombia could neither confirm nor deny the vessel's registration. Therefore, under 46 U.S.C. § 70502(d)(1)(C) the vessel was a vessel without nationality and subject to the jurisdiction of the United States pursuant to 46 U.S.C. § 70502(C)(1)(A). Below is a picture of the vessel.



[GE 1]

**November 30, 2017**

The Coast Guard Cutter STEADFAST interdicted a low-profile vessel over 300 nautical miles away from land in international waters. The Coast Guard identified a master, but he did not make a claim of nationality for the vessel. Therefore, the vessel was a vessel without nationality (46 U.S.C. § 70502(d)(1)(B)), and subject to the jurisdiction of the United States pursuant to 46 U.S.C. 70502(c)(1)(A). Below is a picture of the vessel.



[GE 2]

**September 5, 2019**

The Coast Guard Cutter VALIANT interdicted a self-propelled semi-submersible vessel approximately eighty-eight nautical miles away from land in international waters. There were four crewmembers on the vessel, no indicia of nationality and no claim of nationality for the vessel. Therefore, the vessel was a vessel without nationality (46 U.S.C. § 70502(d)(1)(B)), and subject to the jurisdiction of the United States pursuant to 46 U.S.C. 70502(c)(1)(A).



[GE 3]

**December 17, 2019**

The Coast Guard Cutter TAMPA interdicted a low-profile vessel in international waters over 200 nautical miles away from land. The Coast Guard contacted Colombia to confirm the nationality of the vessel, but Colombia could neither confirm nor deny the vessel's registration.

Therefore, under 46 U.S.C. § 70502(d)(1)(C) the vessel was a vessel without nationality and subject to the jurisdiction of the United States pursuant to 46 U.S.C. § 70502(C)(1)(A). Below is a picture of the vessel.



[GE 4]

## **APPLICABLE LAW**

The MDLEA makes it illegal to "knowingly or intentionally manufacture or distribute, or possess with intent to manufacture or distribute, a controlled substance on board ... a vessel subject to the jurisdiction of the United States." 46 U.S.C. § 70503(a)(1). It is also illegal to conspire to violate that section. 46 U.S.C. § 70506(b).

Under the MDLEA, whether or not a vessel is subject to the jurisdiction of the United States is a preliminary question of law to be determined by the trial judge. 46 U.S.C. § 70504(a); *see also United States v. Tinoco*, 304 F.3d 1088, 1114-15 (11th Cir. 2002). This subject matter jurisdictional provision was not intended as a protection for defendants; rather, it was "inserted into the statute as a diplomatic courtesy to foreign nations and as a matter of international comity in order to avoid 'friction

with foreign nations.'" *Tinoco*, 304 F.3d at 1108 (*citing United States v. Gonzalez*, 776 F.2d 931, 940 (11th Cir. 1985)). Accordingly, the MDLEA jurisdictional requirement is not an element of the offense that must be submitted to the jury and proven beyond a reasonable doubt by the Government, despite the fact that it may involve a factual component. *Tinoco*, 304 F.3d at 1110-11.

The MDLEA details various circumstances that render a vessel subject to the subject matter jurisdiction of the United States. Before a court may exercise its adjudicatory authority under the MDLEA, the government must first establish that the vessel, when apprehended, was either: (1) without nationality (*i.e.* a "stateless vessel"); (2) assimilated to a vessel without nationality; (3) registered in a foreign nation if that nation has consented or waived objection to the enforcement of U.S. law aboard the vessel; (4) in the customs waters of the United States; (5) in the territorial waters of a foreign nation if that nation consents to the enforcement of U.S. law by U.S. authorities; or, in certain circumstances, (6) a vessel in the contiguous zone of the United States. 46 U.S.C. § 70502(c).

Under the MDLEA, a "vessel without nationality" explicitly includes "a vessel aboard which the master or individual in charge fails, on request of an officer of the United States authorized to enforce applicable provisions of United States law, to make a claim of nationality or registry for that vessel." 46 U.S.C. § 70502(d)(1)(B). Furthermore, a "vessel without nationality" includes "a vessel aboard which no individual, on request of an officer of the United States authorized to enforce

6

applicable provisions of United States law, claims to be the master or is identified as the individual in charge, and that has no other claim of nationality or registry under paragraph (1) or (2) of subsection (e)." 46 U.S.C. § 70502(d)(1)(D).

The MDLEA falls within Congress's enumerated power "[t]o define and punish … Felonies committed on the high Seas." U.S. Const. art. I, § 8, cl. 10. *See United States v. Campbell*, 743 F.3d 802, 805, 809-10 (11th Cir. 2014). "International law permits any nation to subject stateless vessels on the high seas to its jurisdiction." *U.S. v. Marino-Garcia*, 679 F.2d 1373, 1383 (11th Cir. 1982). The Eleventh Circuit has recognized that the MDLEA applies to vessels outside of the recognized 12-mile limit of a nations' territorial seas. *See United States v. McPhee*, 336 F.3d 1269, 1273 (11th Cir. 2003). Similarly, in *United States v. Rioseco*, 845 F.2d 299 (11th Cir. 1988) (affirming Lacey Act conviction), the Eleventh Circuit recognized that a vessel stopped by the Coast Guard "within the Bahamas' exclusive economic zone" was "in an area of the high seas." *Id*. at 300. A vessel outside of the 12-mile territorial limit, even within an exclusive economic zone (EEZ) of another nation, is located on the high seas and within United States criminal jurisdiction. *See United States v. Beyle*, 782 F.3d 159, 167 (4th Cir. 2015).

The Federal Regulations specifically define the "high seas" for the purposes of 14 U.S.C. § 522, the statute authorizing the Coast Guard's law enforcement power[1]: "high seas includes the exclusive economic zones of the United States and other nations, as well as those waters that are seaward of territorial seas of the United States and other nations." 33 C.F.R. § 2.32(c). "The EEZ is a maritime area in which the coastal state may exercise certain limited powers as recognized under international law. The EEZ is not the same as the concept of the territorial sea, and is beyond the territorial jurisdiction of any coastal state." United States: Proclamation on an Exclusive Economic Zone, 22 I.L.M. 461, 462 (March 1, 1983).

Finally, the "protective principle" of international law provides context in such cases. "Congress, under the 'protective principle' of international law, may assert extraterritorial jurisdiction over vessels in the high seas that are engaged in conduct that 'has a potentially adverse effect and is generally recognized as a crime by nations that have reasonably developed legal systems.'" *Tinoco*, 304 F.3d at 1108, *quoting Gonzalez*, 776 F.2d at 939. The Eleventh Circuit consistently maintains that the MDLEA is a proper exercise of Congress' power under the Felonies Clause, which is not restricted by international law. *United States v. Cabezas-Montano*, 949 F.3d 567, 587 (11th Cir. 2020); *United States v. Macias*, 654 F. App'x 458, 460-61 (11th Cir. 2016).

---

[1] The Coast Guard may make inquiries, examinations, inspections, searches, seizures, and arrests upon the high seas and waters over which the United States has jurisdiction, for the prevention, detection, and suppression of violations of laws of the United States. 14 U.S.C. § 522(a).

# ARGUMENT

Here, Coast Guard officials determined that the four interdictions were vessels without nationality.

- July 18, 2015:

    o The vessel was without nationality in accordance with 46 U.S.C. § 70502(d)(1)(C) because Colombia could not confirm or deny that the vessel was of Colombian nationality. Below is an excerpt from the Department of State certification for the interaction.

> a. On July 18, 2015, United States law enforcement personnel detected a self-propelled semisubmersible vessel approximately 210 nautical miles south of the Puerto Escondido, Mexico and seaward of the territorial sea of any State. United States law enforcement personnel suspected the vessel of illicit drug trafficking because of the vessel's type and its presence in a known drug trafficking area. United States law enforcement officials approached the vessel. The master made a verbal claim of Colombian nationality for the vessel. No registration documents were provided to, or located by, United States law enforcement personnel at that time.
>
> b. On July 18, 2015, pursuant to paragraph 7 of the Agreement between the Government of the United States of America and the Government of the Republic of Colombia to Suppress Illicit Traffic by Sea, the Government of the United States requested that the Government of the Republic of Colombia confirm the registry or nationality of the suspect vessel and, if confirmed, grant authorization to stop, board, and search the vessel.
>
> c. ==On July 18, 2015, the Government of the Republic of Colombia replied that it could neither confirm nor refute the claim of Colombian registry.==

[emphasis added] [GE 5]

- November 30, 2017:

    o All four of the crewmembers aboard the vessel were convicted of Title 46 offenses and admitted that the vessel was subject to U.S. jurisdiction. *See* 8:17-cr-605-TPB-AEP.

- September 5, 2019:

    o All four of the crewmembers aboard the vessel were convicted of Title 46 offenses and admitted that the vessel was subject to U.S. jurisdiction. *See* 8:19-cr-404-WFJ-SPF.

- December 19, 2019

    o Without nationality in accordance with 46 U.S.C. § 70502(d)(1)(C) because Colombia could not confirm or deny that the vessel was of Colombian nationality.

   a. On December 17, 2019, U.S. law enforcement personnel detected an unknown low-profile vessel in approximate position 02-36 N, 083-39 W, seaward of any State's territorial sea. U.S. law enforcement officials reasonably suspected the vessel of illicit drug trafficking and were granted a Statement of No Objection to conduct a right-of-visit boarding. The vessel bore no indicia of nationality, but the master made a verbal claim of Colombian nationality for the vessel.

   b. On December 17, 2019, under paragraph 7 of the Agreement between the Government of the United States of America and the Government of the Republic of Colombia to Suppress Illicit Traffic by Sea, the Government of the United States requested that the Government of the Republic of Colombia confirm or deny the vessel's registry and, if confirmed, grant authorization to board and search the vessel.

   c. ==On December 17, 2019, the Government of the Republic of Colombia replied that it could neither confirm nor deny the vessel's registry or nationality.==

[emphasis added] [GE 6]

All the above vessels were subject to the jurisdiction of the United States pursuant to 46 U.S.C. § 70502(c)(1)(A). For all interdictions, the position that the Coast Guard intercepted the vessel was outside the territorial seas of any nation and in international waters. For the duration of the vessel's detection by law enforcement

10

and subsequent interdiction, the vessel was outside the territorial seas of any nation and in international waters.

Accordingly, this Court should apply the plain language of the MDLEA and the Eleventh Circuit's holdings in *Tinoco*, *Gonzalez*, *McPhee*, and *Beyle*, and rule as a matter of law that the vessels were subject to the jurisdiction of the United States at the time of interdiction. The failure of a claim of nationality for the vessel by the persons aboard the vessel or of Colombia to confirm or deny the registration, the interdiction location outside of the territorial seas of any nation, and the plain language of the applicable criminal statute (MDLEA), confirms that these vessels are subject to the jurisdiction of the United States.

The United States respectfully requests a ruling from the Court on this matter prior to the scheduled trial. Should the Court require witness testimony on this issue, however, the United States respectfully requests such testimony be accomplished at trial during the United States' case-in-chief, as the same witnesses on this issue are scheduled to testify at trial. This request is based on the logistical arrangements of these witnesses and their limited availability, which has been coordinated for the week of trial.

**CONCLUSION**

The United States of America respectfully requests that this Honorable Court enter an order determining as a matter of law that the subject vessels were subject to the jurisdiction of the United States at the time they were interdicted by the United States Coast Guard.

        Respectfully submitted,

        GREGORY W. KEHOE
        United States Attorney

By: */s/ Michael Leath*
        Michael Leath
        Special Assistant United States Attorney
        United States Attorney No. 217
        E-mail: Michael.Leath@usdoj.gov

U.S. v. RIOS-SILVA                    Case No. 8:21-cr-286-JSM-NHA

## **CERTIFICATE OF SERVICE**

I hereby certify that on April 15, 2025, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following:

Counsel of Record

                        By: */s/ Michael Leath*
                             Michael Leath
                             Special Assistant United States Attorney
                             United States Attorney No. 217
                             400 N. Tampa St., Ste. 3200
                             Tampa, FL 33602-4798
                             Telephone: (813) 274-6168
                             Facsimile: (813) 274-6358
                             E-mail: Michael.Leath@usdoj.gov