UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

v.                                    CASE NO. 8:21-cr-286-JSM-NHA

JUAN GABRIEL RIOS SILVA

## GOVERNMENT'S TRIAL MEMORANDUM

The United States of America files the following trial memorandum for the purpose of aiding the Court as to the admissibility and relevance of specific evidence, address anticipated objections from the Defendant, and to present the case to the jury in a timely manner. This is not intended to be inclusive of every potential issue that may come before the Court and may be supplemented as needed.

## BACKGROUND

Despite the prolix litigation over motions to dismiss, eliminating counts from the Superseding Indictment, suppress evidence, and assert a public authority defense, this is an otherwise simple case.

Since the early 2000s the Rios Silva brothers, known to the southwestern Colombian drug trafficking community as "Los Papis," were the source of engines for use on cocaine smuggling vessels from South America to Mexico and Central America. Through their business "Agronautica," Los Papis provided a service to the traffickers, helping them acquire engines that could not be traced back to them—and Los Papis knew the engines they were selling would be used for drug trafficking.

Investigations of the Middle District of Florida and the Panama Express Strike Force resulted in several seizures of vessels smuggling cocaine in the eastern Pacific Ocean en route to Mexico and Central America to recipients such as the Sinaloa Cartel. Cooperating defendants from those interdictions led to prosecutions of higher-level organizational members, and those cooperators identified Los Papis as the go-to source for engines for smuggling operations.

The evidence will show that the defendants were fully aware that their best paying customers were narcotraffickers and that the purpose for the engines they were selling was for drug smuggling operations. They charged the narcotraffickers higher prices and conducted the payments with them in cash. At times, the defendants took measures to falsify documents about the engine sales so that the engines could pass muster with Colombian inspectors. Juan Rios Silva instructed conspirators to remove the serial numbers from the engines they were using. The defendants also provided kits with additional parts and supplies for the engines to make the long journey from South America to Central America and Mexico. Juan Rios Silva invested in smuggling operations and offered narcotraffickers opportunities to launder their money through various businesses. On at least one occasion, narcotraffickers stored cocaine at Juan Rios Silva's business before dispatching it.

2

The evidence in this case includes Juan Rios Silva's purchase of engines in the United States. Through financial records and witnesses, Juan Rios Silva facilitated the purchase of at least one engine using the proceeds of a specified unlawful activity—drug trafficking. Records from the seller of the engine included records from Clearwater, within the Middle District of Florida.

Juan Rios Silva was arrested in August 2021 after traveling to Miami. After being advised of his *Miranda* rights, he admitted to the following while at the Customs and Border Protection office at Miami International Airport:

- He is the owner of Agronautica in Colombia. He has two stores: one in Tumaco and one in Cali, and opened the Tumaco store first in 2003;

- He sold engines and boat accessories to various narcotraffickers, and knew that if he was going to sell an expensive engine that it would not be used on fishing vessels;

- He knew which customers were narcotraffickers and charged higher prices to them;

- He sold Cummins brand diesel engines for self-propelled semi-submersible vessels used in drug trafficking;

- He offered services that other sellers would not, like transporting the engines and accessories from his store to the vessel

3

construction sites as well as by honoring warranties;

- He named names, including one of his own brothers, implicating him in similar criminal activity.

## EVIDENTIARY ISSUES

### A. Statements and Acts in Furtherance of the Charged Conspiracy

Federal Rule of Evidence 801(d)(2)(E) provides that a statement is not hearsay if made by a coconspirator of the defendant during the course and in furtherance of the conspiracy. Fed. R. Evid. 801(d)(2)(E). To offer a coconspirator statement pursuant to Rule 801(d)(2)(E), the United States must establish by a preponderance of the evidence that: (1) a conspiracy existed; (2) the conspiracy included the declarant and the defendant against whom the statement is offered; and (3) the statement to be introduced was made during the course and in furtherance of the conspiracy. *See Bourjaily v. United States*, 483 U.S. 171 (1987); *United States v. Dickerson*, 238 F.3d 1036, 1049 (11th Cir. 2001).

In determining if a conspiracy existed, the court may consider the coconspirator's statement sought to be admitted as well as other independent evidence. *Bourjaily*, 483 U.S. at 180-81; *United States v. Chestang*, 849 F.2d 528, 531 (11th Cir. 1988). The Court need not make a pretrial determination that the statements are admissible, *see United States v. James*, 590 F.2d 575 (5th Cir. 1979); rather, the United States may assure the court that the statements are connected to a

conspiracy and the Court may rule at the close of the case-in-chief whether the statements are admissible, *see United States v. Hasner*, 340 F.3d 1261, 1275 (11th Cir. 1975).

Statements serving a necessary part of a conspiracy – for example, by concealing it or impeding an investigation – are admissible as coconspirator statements. *See United States v. Blakey*, 960 F.2d 996, 998 (11th Cir. 1992) (citing *United States v. Griggs*, 735 F.2d 1318, 1325 (11th Cir. 1984)). Moreover, a conspiracy for admitting a coconspirator statement need not be the same one for which the defendant is charged. *United States v. Bowe*, 221 F.3d 1183, 1193-94 (11th Cir. 2000). The Eleventh Circuit applies a broad standard in determining whether a statement is made in furtherance of a conspiracy. *See United States v. Bazemore*, 41 F.3d 1431, 1434-35 (11th Cir. 1994); *see also United States v. Johnson*, 450 Fed. Appx. 878 (11th Cir. 2012) (affirming admission of coconspirator statements in drug and firearm case when post-arrest jailhouse calls and other recorded conversations showed an attempt to influence trial witness testimony).

Here, the United States will offer evidence that Los Papis were involved in a conspiracy to traffic cocaine on vessels subject to the jurisdiction of the United States by knowingly supplying engines to narcotraffickers for drug smuggling operations. Cooperating defendants are anticipated to testify that the Rios Silva brothers sold the

engines knowing that they would be used for drug trips and that they had discussions with one or more Rios Silva brothers to that effect.

## 1. Authentication of Voices in Recorded Calls and Video

There are recorded calls involving Juan Rios Silva and others relevant to the United States's case-in-chief, as well as relevant calls intercepted in accordance with Colombian law. The participants of a conversation may be established through a variety of means, including self-identification, identification through nicknames, surveillance, and monitoring agents' use of known voice samples of the participants. *See United States v. Green*, 40 F.3d 1167, 1173 (11th Cir. 1994).

A witness to a conversation may offer his or her opinion regarding what the people engaged in the conversation intended. *See United States v. Awan*, 966 F.2d 1415, 1430 (11th Cir. 1992). When the testimony of a witness is based upon his/her perception of conversations, the accuracy of those questions is a question for the jury. *United States v. Rivera*, 780 F.3d 1084, 1094 (11th Cir. 2015) (quoting *United States v. Davis*, 787 F.2d 1501, 1505 (11th Cir. 1986)). Moreover, a witness may clarify conversations punctuated with ambiguous references to events that are clear only to the listener(s) of the conversation. *Rivera*, 780 F.3d at 1094 (citing *Awan*, 966 F.2d 1430).

6

## B. Admissions and Adoptive Admissions

To the extent the Court finds certain out-of-court statements are (1) hearsay as defined under the Federal Rules of Evidence and (2) not admissible as coconspirator statements in furtherance of the conspiracy, independent bases still exist for admitting these statements. Statements of the defendant offered for the truth of the matter are admissible as statements of a party opponent. Fed. R. Evid. 801(d)(2)(A). Certain statements may also be introduced as adopted admissions.   Fed. R. Evid. 801(d)(2)(B).

A statement offered as an adopted admission must meet two criteria. The "primary inquiry is whether the statement was such that, under the circumstances, an innocent defendant would normally be induced to respond." *See United States v. Carter*, 760 F.2d 1568, 1580 (11th Cir. 1985) (internal citations omitted). Second, there must be "sufficient foundational facts from which the jury could infer that the defendant heard, understood, and acquiesced in the statement." *Id.*

In the current case, the nature of the conversations the United States may introduce meet both criteria. The conversations that the defendant may object to involve two-person conversations between the defendant and others who will testify as to their meaning and substance. Thus there are foundational facts to establish that the parties to the conversations at issue would be induced to respond and could hear, understand, and acquiesce to the statements made.

7

### C. Use of Transcripts

The United States may introduce transcripts of some or all of the recordings offered during its case-in-chief. All of the substantive recorded conversations in this case are in Spanish.

Regarding identification of the speakers and accuracy, it is "not a necessary predicate for [the] admission of [such] transcripts . . . that each officer who prepared the transcript testify to its accuracy." *United States v. Green*, 40 F.3d 1167, 1173 (11th Cir. 1994). Instead, the United States will rely on witnesses – including one or more participants in those conversations – who can testify as to the identity of the speakers. *See id.* (identity of speaker can be established through various means, to include self-identification, nicknames, known voice exemplars, and agent familiarity).

## OTHER POTENTIAL LEGAL ISSUES

### A. Public Authority, Entrapment by Estoppel, and Entrapment

Juan Rios Silva tried, and failed, to assert that he was acting under public authority during the charged conspiracy. In short, he maintained that he was working on behalf of a federal agent known as "Shakey," even though the evidence will show in this case that he was in contact with "Shakey" once in the 2014/2015 timeframe then once more in 2021. *See* Doc. 160 at 12 (Defendant's Motion to Dismiss on Speedy Trial Grounds); *see also* Doc. 64 at 4-5 (Response to Notice of

Public Authority Defense). Juan Rios Silva never agreed to cooperate with the United States.

Though the Court ruled on the non-applicability of the public authority and entrapment by estoppel defenses over two years ago, *see* Doc. 89, attempts to inject either doctrine into the proceedings is foreseeable. Indeed, Juan Rios Silva's proposed jury instructions include an instruction for entrapment (but not entrapment by estoppel).

**1. Public Authority and Entrapment by Estoppel**

A defendant may assert a public authority affirmative defense when he has knowingly acted in violation of federal criminal law, but in reasonable reliance on the authorization of a government official. *See United States v. Baptista-Rodriguez*, 17 F.3d 1354, 1368 n. 18 (11th Cir. 1994); *see also United States v. Reyes-Vasquez*, 905 F.2d 1497, 1500 n. 5 (11th Cir. 1990) (defense is applicable when a defendant alleges his actions were taken under color of a public authority).

The defense can only be applied if two conditions are met. First, a law enforcement officer must have actually authorized the commission of the particular criminal act at issue, and the defendant must have relied on that authorization when engaging in that conduct. *United States v. Johnson*, 139 F.3d 1359, 1365-66 (11th Cir. 1998) (public authority defense only applies if defendant shows he "relied on official government communications before acting in a manner proscribed by law," and that

the reliance was reasonable). Second, the government official must have had *actual*
authority to permit the act in question. *See id*. at 1365; *see also Baptista-Rodriguez*, 17
F.3d at 1368 n. 18 ("[R]eliance on the *apparent* authority of a government official is
not a defense in this circuit….").

The difference between public authority and entrapment by estoppel is that the
defendant must show in a public authority defense that the agent had actual
authority to engage in otherwise illegal activity; entrapment by estoppel, on the other
hand, can be shown through the apparent authority of the agent to permit the
otherwise illegal activity. *United States v. Alvarado*, 808 F.3d 474, 485 (11th Cir. 2015).
Entrapment by estoppel involves the defendant's reliance on a misrepresented point
of law from a government official. *Id*. at 484-85. But simple belief, no matter how
well-intentioned is not enough. There must be corroborating evidence through, for
example, communications and a course of dealing between the defendant and the
agents that the otherwise illegal activity was authorized. *Id*. at 492.

### 2. Entrapment

Entrapment by estoppel is a public authority doctrine; simple entrapment
occurs when the government induces someone to commit a crime who lacks the
predisposition to engage in the conduct. *See Matthews v. United States*, 485 U.S. 58, 63
(1988). "Entrapment is an affirmative defense that requires (1) government
inducement of the crime, and (2) lack of predisposition on the part of the defendant

to commit the crime before the inducement." *United States v. Rutgerson*, 822 F.3d 1223, 1234 (11th Cir. 2016).

Presentation of entrapment is a two-step process. *United States v. Mayweather*, 991 F.3d 1163, 1176 (11th Cir. 2021) (describing the elements of entrapment as "two distinct stages"). First, the trial must determine if the defendant produced sufficient evidence of government inducement. *Id*. "If the defendant meets this initial burden, [he] is entitled to have his defensive theory of the case put before the jury with appropriate instructions from the trial judge." *Id*. (quotations omitted). "Once before the jury, the burden shifts to the government to prove the defendant's predisposition to commit the crime beyond a reasonable doubt." *Id*.

Inducement occurs upon a showing of sufficient evidence that government conduct created a substantial risk of a defendant committing an offense he was otherwise unready to commit. *United States v. Orisnord*, 483 F.3d 1169, 1178 (11th Cir. 2007); *see also Mayweather*, 991 F.3d at 1176. Mere suggestion of a crime or initiation of contact is not enough; there must be an element of persuasion or coercion consisting "of opportunity plus something like excessive pressure or manipulation of a non-criminal motive." *Mayweather*, 991 F.3d at 1176 (quoting *United States v. Brown*, 43 F.3d 618, 623 (11th Cir. 1995)). Predisposition can be shown through the defendant's ready commission to commit the crime or not backing out when given a chance. *United States v. Isnadin*, 742 F.3d 1278, 1298 (11th

11

Cir. 2014). Prior related offenses are relevant, but not dispositive. *United States v. Andrews*, 765 F.2d 1491, 1500 (11th Cir. 1985).

The Eleventh Circuit also rejects the doctrine of "derivative" or "vicarious" entrapment. Consistent with the majority of circuits, "[a] defendant cannot avail himself of an entrapment defense unless the initiator of *his* criminal activity is acting as an agent of the [G]overnment." *Isnadin*, 742 F.3d at 1308 (quoting *United States v. Mers*, 701 F.2d 1321, 1340 (11th Cir. 1983) (emphasis in original).

Juan Rios Silva's proposed jury instructions include an entrapment defense. How he intends to make a *prima facie* showing of entrapment on the proffered evidence during the United States' case-in-chief is nebulous. The evidence will show that Juan Rios Silva supplied engines to narcotraffickers since around 2003—knowing the purpose of the voyages—charged extra to narcotraffickers, helped falsify paperwork, permitted cocaine to be stored at least one time at his Tumaco shop before dispatch, and offered opportunities to narcotraffickers to launder their money. Moreover, none of the cooperating defendants were acting as an agent of law enforcement for the events that will be presented at trial.

Respectfully submitted,

GREGORY W. KEHOE
United States Attorney


By:     */s/ Daniel Baeza*
        DANIEL BAEZA
        Assistant United States Attorney
        United States Attorney No. 164
        400 N. Tampa Street, Suite 3200
        Tampa, Florida 33602-4798
        Telephone: (813) 274-6000
        Facsimile: (813) 274-6358
        E-mail: Daniel.Baeza@usdoj.gov

**United States v. Rios Silva**          **Case No. 8:21-cr-286-JSM-NHA**

## CERTIFICATE OF SERVICE

I hereby certify that on April 18, 2025, I electronically filed the

foregoing with the Clerk of the Court by using the CM/ECF system which

will send a notice of electronic filing to the following:

Defense counsel of record

/s/ Daniel Baeza
Daniel Baeza
Assistant United States Attorney
United States Attorney No. 164
400 N. Tampa Street, Suite 3200
Tampa, Florida 33602-4798
Telephone: (813) 274-6000
Facsimile: (813) 274-6358
E-mail: Daniel.Baeza@usdoj.gov

14